UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,  )
          )
     Plaintiff,  )
          )
   vs.    )
          )  No. 1:12-cr-00003-SEB-TAB-4
ANDRE  PATTERSON,   )
          )
     Defendant.  )

**ORDER ON DEFENDANT ANDRE PATTERSON'S MOTION TO DISMISS**

   This cause is before the Court on Defendant Andre Patterson's Motion to Dismiss

[Docket No. 189], filed on November 14, 2013 pursuant to the Speedy Trial Act, 18 U.S.C. §§

3161 *et seq.*, and the Sixth Amendment to the United States Constitution. For the reasons set

forth below, Defendant's motion is DENIED.

**Factual and Procedural Background**

   Defendant Andre Patterson, along with his co-Defendants Cody English, Thomas

Owings, Courtney Pickett, and Lyssa Aliano, was indicted by a federal grand jury on January 11,

2012. The indictment charges Defendant with conspiracy to possess and distribute cocaine,

attempt to possess and distribute cocaine, attempted robbery, possession of a firearm in

furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. Docket

No. 47.  Defendant and three of his co-defendants made their initial appearance before U.S.

Magistrate Judge Kennard Foster on January 18, 2012 and waived formal arraignment. Docket

No. 78. The final co-defendant, Lyssa Aliano, made her initial appearance on January 23, 2012.

*See* Case No. 1:12-cr-0003-SEB-TAB-5, Docket No. 83. Defendant's case was originally set for

trial on February 27, 2012. Def.'s Br. ¶ 2. For reasons explained further below, the trial date has been pushed back on a number of occasions. From the time of his arrest on these charges in December 2011 to the present day—some two years—Defendant has remained in federal custody.

The first delay of the trial date was occasioned on February 9, 2012, when co-defendant Thomas Owings moved for a continuance, seeking additional time for the purpose of trial preparation and/or plea negotiation. *See* Case No. 1:12-cr-00003-SEB-TAB-2, Docket No. 85. Defendant, along with the other co-defendants, represented to the Court that he had no objection to the continuance, and the Court accordingly granted the motion on February 14, 2012, reassigning the case for trial on April 30, 2012. Docket No. 87.

Ten days later, on February 24, 2012, Defendant's counsel filed a "motion to determine competency," requesting that Defendant be tested to determine whether he was unable to understand the nature and consequences of the proceedings or to assist in his own defense—and thus legally incompetent to be tried under 18 U.S.C. § 4241. Docket No. 88. The Court granted that motion on March 19, 2012, ordering that a psychiatric examination of Defendant be conducted. Docket No. 91. On April 11, 2012—nineteen days before the scheduled trial date— co-defendant Courtney Pickett moved for a continuance, seeking delay on the grounds that his attorney had a scheduling conflict. Docket No. 94. Defendant joined in this request for continuance, which the Court granted two days later, reassigning the case for trial on July 9, 2012. Docket No. 96. Shortly thereafter, co-Defendant Courtney Pickett once more moved for a continuance—joined again by Defendant—seeking delay on the grounds that the July 9 trial date presented another scheduling conflict for Pickett's attorney. Docket No. 97. The Court granted

this motion on April 19, 2012, agreeing to postpone the trial date by two weeks, to July 23, 2012. Docket No. 100.

At the end of April 2012, the Court received the report of the psychiatric examination of Defendant conducted by Dr. Stephanie Callaway pursuant to the Court's previous order. Docket No. 101. After a hearing on a joint motion from the parties, Magistrate Judge Foster ordered on May 25, 2012, that a further competency examination be conducted under the supervision of the Bureau of Prisons in order to supplement the report provided by Dr. Callaway; he remanded Defendant to the custody of the Attorney General for the purposes of the examination. Docket No. 112.

On July 9, 2012, with Defendant still in the custody of Bureau of Prisons officials in Illinois for his competency evaluation, defense counsel moved that the trial be continued, citing the impossibility of proper preparation for trial when Defendant and his attorney were unable to consult in person. Docket No. 119. The Court granted this motion on July 20, 2012, reassigning the case for trial on September 24, 2012. Docket No. 120.

After receiving the examination report on Defendant's competency, Magistrate Judge Foster held an evidentiary hearing on September 14, 2012, pursuant to 18 U.S.C. § 4241(c). That same day, after weighing two psychiatric reports and the views of the parties, Magistrate Judge Foster ruled that Defendant was incompetent to stand trial. Docket No. 130. Pursuant to 18 U.S.C. § 4241(d), the Magistrate remanded Defendant to federal custody for hospitalization and treatment with the aim of restoring his competency. *Id.* Defendant was initially transferred to the federal correctional facility in Henderson, Kentucky, pending his ultimate transfer to the Butner Medical Facility in North Carolina for treatment. Def.'s Br. 3.

While Defendant was in federal custody in Kentucky awaiting transfer, the trial date was continued several more times. On September 14, 2012—the same day as Defendant's competency hearing before Magistrate Judge Foster—defense counsel filed a motion to continue, citing the ongoing unavailability of his client for preparation.[1] On September 19, 2012, the Court granted the continuance, ruling that the delay was necessitated by the Defendant's legal incompetency; the September 24 trial date was rescheduled to December 10, 2012. Docket No. 129. On November 29, 2012, the Court again granted a motion to continue, this time on the motion of co-Defendant Dennis English, reassigning the case for trial on March 4, 2013. As to Defendant Patterson, the Court specifically found this continuance justified on the basis of his continued incompetency. Docket No. 155.

In November 2012, it came to defense counsel's attention that Defendant remained at the federal correctional facility in Kentucky, and had not yet been moved to the Butner Medical Center for treatment as anticipated. Def.'s Br. 3, ¶ 9. On November 30, defense counsel notified the U.S. Attorney's Office that Defendant had not yet been transported. *Id.* After a further delay of nearly two months without any change in Defendant's status, Defendant requested a hearing on January 18, 2013, noting that more than four months had elapsed since the Court had remanded him to federal custody for treatment and he had "not received any medical or psychiatric exams or treatment pursuant to the court's order." Docket No. 167, ¶ 5–6. Before the Court ruled on Defendant's motion for a hearing, the Court received word on March 19, 2013, that Defendant had finally been moved to the Butner Medical Center for treatment, and, accordingly, Defendant's motion was denied as moot. Docket No. 170. While his request for a hearing was pending, Defendant also filed a renewed motion to continue. Docket No. 168. On

---

[1] Co-Defendant English concurrently filed a motion to continue, which the Court granted, but on a different basis. *See* Docket No. 129.

February 25, 2013, the Court granted the continuance, noting that the Defendant's incompetency continued to necessitate postponement and reassigning the case for trial on June 17, 2013. Docket No. 169.

While Defendant remained in federal custody in North Carolina, defense counsel sought and received two additional continuances. In his April 15, 2013, motion to continue, defense counsel relayed that the Butner facility's recommendations as to Defendant were not set to be completed until July 18, making a June trial impossible; he also revealed that he (counsel) was scheduled for a surgery that would incapacitate him for several weeks in June and July. Docket No. 173. The Court granted this motion the next day, noting the Defendant's continued incapacity to stand trial and reassigning the case for trial on October 7, 2013. Docket No. 174. On August 19, 2013, defense counsel again moved to continue the case, arguing that "[c]ounsel has not had access to his client since September 2012 and is unable to provide effective representation for Mr. Patterson at a trial based on his present inability to understand the proceedings and assist his counsel." Docket No. 180, ¶ 6. On August 22, 2013, the Court granted this motion, reassigning the case for trial on January 13, 2014, on the basis of Defendant's incompetency. Docket No. 181. To date, no further continuances have been sought or granted, and trial remains scheduled to commence on January 13, 2014.

After considerable delay, the Butner Medical Center produced a competency restoration study for Defendant, which the Court received on August 9, 2013 and filed under seal for the parties' review. The report related that efforts at treatment had been unavailing and Defendant remained incompetent, and it recommended that the Court order the involuntary administration of psychotropic medication to restore his ability to stand trial. Docket No. 183. At a hearing on October 2, 2013, the Court authorized the medical personnel at Butner to administer the

treatment they had recommended, but it stayed the order pending Defendant's interlocutory

appeal. The Court also requested that the federal officials with custody of Defendant provide an

updated report on his condition on or before February 3, 2014. *See* Docket No. 198.

All told, nearly two years have passed since Defendant was indicted with his co-

Defendants in January 2012 and first appeared before this Court. Defendant filed this motion to

dismiss on November 14, 2013. Docket No. 189.

**Legal Analysis**

Defendant seeks dismissal of the charges against him on two grounds. First, he alleges

that the delay between the filing of charges and his trial violates the concrete time limitations set

forth by the Speedy Trial Act. Second, he urges that the delay violates his Sixth Amendment

right to a speedy trial even if it does not run afoul of more specific statutory prohibitions. We

ultimately conclude that dismissal is not warranted on either statutory or constitutional grounds.

## I.      The Speedy Trial Act

### A. Legal Standard

Congress enacted the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, to give more concrete

form to the constitutional guarantee of a speedy trial for criminal defendants, and it serves dual

purposes: "to clarify the rights of defendants and to ensure that criminals are brought to justice

promptly." *See United States v. Pollock,* 726 F.2d 1456, 1459–1460 (9th Cir. 1984) (citing

*Barker v. Wingo,* 407 U.S. 514, 519–520 (1972)). The Act applies to all defendants facing

federal charges, and it imposes two procedural time limits. A defendant must be indicted no later

than 30 days after his arrest, and the trial of a defendant who has pleaded not guilty must

commence no later than 70 days after his indictment or initial appearance in the court before

which the charges have been brought, whichever comes later. 18 U.S.C. §§ 3161(b), 3161(c).

There are also certain exceptions to the general rule, under which the Act provides that some types of procedural delays toll the limitations period and are not charged to the government. Delays resulting from proceedings to determine the defendant's competency, from the defendant's trial on other charges, from interlocutory appeal, from any pretrial appeal filed by the defendant, or from physical transportation of the defendant—among other enumerated causes—automatically toll the 30- or 70-day clock. 18 U.S.C. § 3161(h)(1); *see also United States v. O'Connor*, 656 F.3d 630, 642 (7th Cir. 2011) (affirming that "periods of delay excludable under § 3161(h)(1)–(6) may be automatically excluded if the specified conditions are present"). The running of the time limit is also automatically halted during "any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4). In addition to the enumerated automatic exclusions, a judge may exclude under the Act any other period of delay if she finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In a multi-defendant case, any excludable delay attributable to one defendant is ascribed to all co-defendants. *See United States v. Mustread,* 42 F.3d 1097, 1106 (7th Cir. 1994); *United States v. Tanner,* 941 F.2d 574, 580 (7th Cir. 1991).

When the time limitations imposed by the Speedy Trial Act have been exceeded, the charges against a defendant must be dismissed. 18 U.S.C. § 3162(b); *see, e.g., United States v. Fuller,* 86 F.3d 105 (7th Cir. 1996).

## B. Application to Defendant

Defendant contends that the total of non-excludable days between his indictment or initial appearance and his trial exceeds 70, in violation of the Act. Although the methodology he has used in reaching this conclusion is not well-explained, he argues that there have been four

distinct non-excludable periods since January 2012. Initially, he asserts that the 29 days between Defendant's indictment on January 11, 2012 and the filing of Defendant's first motion to continue on February 9, 2012 are "clearly chargeable" to the government, since no exclusion plausibly applies. Def.'s Br. ¶ 18. While he concedes that the uninterrupted series of eight continuances since February 9, 2012 render all time since that date "arguably excludable," he nevertheless contends that three more blocks of time should be charged to the government under the Act. *Id.* at ¶ 19.[2] First, he insists that the time Defendant spent in federal custody in Illinois undergoing a competency evaluation pursuant to Magistrate Judge Foster's order of May 24, 2012—a period of 88 days—exceeds the limitations imposed on competency evaluations imposed by a separate statute, 18 U.S.C. § 4247. *Id.* at ¶¶ 5–6. According to his reckoning, the 43 days by which this time exceeded the statutory limit should be charged to the government. *Id.* at ¶ 27. Second, he argues that the lengthy 188-day span between Magistrate Judge Foster's treatment order on September 14, 2012, and Defendant's actual transfer to the Butner Medical Center on March 21, 2013, should be charged to the government because it exceeds the reasonable exclusion period for the time required to transport a defendant. *Id.* at ¶ 20. Finally, Defendant seeks to charge to the government the 20 days that elapsed between the completion of the Butner Medical Center's treatment report on July 19, 2013 and the report's transmission to the Court on August 9, 2013, arguing that "the report was not appropriately or timely transmitted to the court." *Id.* at ¶¶ 26–27. We now address the timing issues raised by Defendant in turn.

### 1. The 29 days from 1/11/2012 to 2/9/2012

---

[2] In what we assume to be a series of typographic errors, Defendant's brief states: "The time between 2/9/2011 and 9/15/2013 is arguably excludable under 18 U.S.C. 3161(h)(4)." Def.'s Br. ¶ 19. Presumably Defendant meant 2/9/2012 (the date of his indictment) as the start date, and we will also assume that for most of this time period he meant to cite 18 U.S.C. § 3161(h)(1) or § 3161(h)(7)(A) rather than 18 U.S.C. § 3161(h)(4). Because Defendant was not adjudged incompetent until well after his indictment date, Section 3161(h)(4) would not have applied until after September 2012. We discuss the application of the differing bases for exclusion further below.

It is clear that no exclusions apply to the time period before any motions for continuance—or other pre-trial motions—were filed by any of the defendants in this case, and the government does not dispute that this period counts towards the 70-day limit imposed by the Act. However, Defendant has erred in calculating the time encompassed by this initial period. Under the Act, the 70-day clock in a multi-defendant trial starts when the last of the defendants has been indicted or made his initial appearance in court, whichever comes later. *See United States v. Baker,* 40 F.3d 154, 159 (7th Cir. 1994) (noting that "the seventy-day clock does not start ticking until the last co-defendant has been arraigned") (citing *Henderson v. United States,* 476 U.S. 321, 323 n.2 (1986)). Here, the defendants were all indicted on January 11, 2012, but they did not make their initial appearances in court (all waiving formal arraignment) until a week later, on January 18, 2012.[3] Therefore, the period chargeable to the government before the first pre-trial motion was filed is the 22 days between January 18, 2012 and February 9, 2012—not 29 days, as Defendant claims.

### 2. The 88 days from 5/24/2012 to 8/20/2012

After a hearing on May 24, 2012, Magistrate Judge Foster found "reasonable cause" to believe that Defendant was incompetent to stand trial, and accordingly ordered that he undergo a competency evaluation in federal custody. He was transferred to a federal correctional facility in Illinois for this purpose, and the Bureau of Prisons authored a "psychological examination and evaluation" report on August 20, 2012—88 days after the hearing. Defendant argues that this period of evaluation was excessive in light of federal statutes governing length of commitment for preliminary competency determinations. *See* 18 U.S.C. §§ 4241, 4247. He further notes that

---

[3] The last of the co-defendants to make her initial appearance was Lyssa Aliano, who appeared before Magistrate Judge Foster on January 23, 2012. *See* Case No. 1:12-cr-0003-SEB-TAB-5, Docket No. 83. However, Ms. Aliano's case has been terminated by plea agreement, and thus her procedural timeline no longer has bearing on the Speedy Trial Act clocks of her former co-defendants. *See Tanner,* 941 F.2d at 580 (noting that the exclusions applicable to one co-defendant are ascribed to others "absent severance").

Magistrate Judge Foster's order explicitly directed that the evaluation procedure be completed within 45 days, in compliance with the deadline set by 18 U.S.C. § 4247(b). Docket No. 112, ¶ 5. Defendant argues that the amount of time by which the evaluation exceeded this separate statutory limit—43 days—should therefore be charged to the government under the Speedy Trial Act.

Although it may seem equitable to charge the government with such a procedural overrun, Defendant's argument is foreclosed by the text of the Speedy Trial Act itself, by Seventh Circuit precedent, and by the Court's own previous rulings in this case. The Act provides that "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" should be excluded from the 70-day limit. 18 U.S.C. § 3161(h)(1)(A). In *United States v. Fuller,* 86 F.3d 105 (7th Cir. 1996), the Seventh Circuit considered, and rejected, the argument that the time limit imposed by the commitment statute, 18 U.S.C. § 4247(b), on the length of competency evaluations should be read into the Speedy Trial Act. The court held that "[t]o put the two statutes together, borrowing the 30 and 45 day limits from the commitment statute for interpolation into the limitless delay provision of the Speedy Trial Act, would be an audacious bit of judicial creativity—and to no purpose that we can see." 86 F.3d at 106.[4]

We are thus compelled to conclude here that the time Defendant spent undergoing competency evaluation—regardless of its length—tolls the Speedy Trial Act's clock under 18 U.S.C. § 3161(h)(1)(A). In ordering the evaluation, Magistrate Judge Foster reached the same

---

[4] The *Fuller* court further noted that the other avenues for relief still exist for a defendant who believes he has suffered an unduly lengthy detention, ostensibly in order to undergo a competency evaluation. He may seek a writ of habeas corpus, or raise a general Sixth Amendment challenge. 86 F.3d at 106–107.

conclusion, holding that "the time period necessary to evaluate the defendant's current physical and mental competency shall be excluded for Speedy Trial purposes." Docket No. 112, ¶ 8.[5]

Another independently sufficient reason exists to exclude the 88 days at issue from the 70-day limit. As of May 24, 2012, trial was scheduled to commence on July 23, having been postponed from any earlier setting by the Court's grant of a continuance on co-Defendant Courtney Pickett's motion. Docket No. 100. The Court had found, pursuant to 18 U.S.C. § 3161(h)(7)(A), "that the ends of justice served by granting the continuance requested outweigh the best interest of the public and the defendants in a more speedy trial because the defendants reasonably require more time to evaluate discovery and explore the possibility of plea agreements." *Id.* Accordingly, the Court had exercised its discretion under the Act to find that "the period of delay from the date of this Order through and including July 23, 2012, shall be excluded in computing the time within which the trial of this action must commence." *Id.*

Before that July 23, 2012 trial date arrived, the Court granted another continuance—this time on the motion of Defendant himself—vacating that date and re-setting the trial for September 24, 2012. Docket No. 120. In granting the motion, the Court made the same discretionary finding under Section 3161(h)(7)(A) of the Act, excluding any delay caused by the continuance from the 70-day time limit. *Id.* Thus, the entire 88-day period which Defendant seeks to charge to the government had already been excluded from Speedy Trial consideration by the Court—independent of the exclusion made for Defendant's competency evaluation period by Magistrate Judge Foster.

In considering a defendant's motion to dismiss under the Speedy Trial Act, a court may, of course, revisit its prior "ends-of-justice" determination under Section 3161(h)(7)(A) that the

---

[5] Magistrate Judge Foster held additionally that "any delay occasioned by the transportation, examination, diagnosis and treatment of the defendant's current medical condition shall be excluded for Speedy Trial purposes pursuant to 18 U.S.C. § 3161(h)(1)(a)(8) and 18 U.S.C. § 3161(h)(4)."

balance of interests favored a particular exclusion. *See, e.g., United States v. Jordan,* 2013 WL 5658025, at *4 (S.D. Ind. Oct. 15, 2013). In granting the continuances at issue here, the Court did not set forth in great detail the reasons for its conclusion that the ends of justice supported a delay of the trial date, nor did it engage in an explicit balancing of the four guidance factors found in Section 3161(h)(7)(B). However, the Seventh Circuit has made clear that a contemporaneous explanation is not necessary, so long as the court offers reasoning for the grounds on which its exclusion rests at some point. *See United States v. Wasson,* 679 F.3d 938, 946 (7th Cir. 2012) (holding that "a court's ends-of-justice findings need not be articulated contemporaneously on the record"). We need not revisit the bases for our prior "ends of justice" determination here since the exclusion under the Act rests on the independently sufficient grounds of Defendant's competency evaluation, but we do note that the physical unavailability of Defendant for any trial preparation during this time span amply justifies our decision, given that the statute directs courts to consider whether failing to grant a continuance would "deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation." *See* 18 U.S.C. § 3161(h)(7)(B)(iv).

### 3. The 188 days from 9/14/2012 to 3/21/2013

Defendant presents two arguments for charging the period of delay between his competency hearing and his transfer to the Butner Medical Center to the government. First, he contends that this period should not be excluded from the 70-day calculations because Section 3161(h)(1)(F) of the Act establishes that time in excess of 10 days consumed in transportation of a defendant is presumptively unreasonable. Def.'s Br. ¶ 20. He also implicitly argues that the delay should not be excludable because it exceeds the four-month limit on competency treatment procedures imposed by Section 4241(d)(1) of the separate federal commitment statute. *Id.* at ¶ 8;

*see also* 18 U.S.C. § 4241(d)(1).[6] Both arguments fail, for much the same reason as we have already explained above.

During the period that Defendant seeks to charge to the government under the Act, the Court granted three continuances—two at the request of Defendant and one at the request of his co-defendant Dennis English.[7] In granting these motions, the Court expressly excluded from Defendant's Speedy Trial Act clock all time between September 19, 2012—the date of the first continuance order—and June 17, 2013—the date provisionally set for trial by the last of these continuance orders.[8] *See* Docket Nos. 129, 155, & 169. In all three cases, the Court grounded the exclusion in Section 3161(h)(4) of the Act, which tolls the time limit for "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4).

Since defense counsel does not dispute that Defendant was incompetent throughout the period in question, *see* Def.'s Br. ¶¶ 28, 32, it is irrelevant whether this 188-day span exceeds the Act's limitations on a reasonable exclusion period for transportation time. Additionally, and as we have noted above, the separate limitations imposed by federal statutes on commitment times for competency treatment are not to be conflated with the 70-day Speedy Trial timeline. *See Fuller,* 86 F.3d at 106. Whether or not the delay in transferring Defendant to the Butner Medical Center for treatment was improper according to some other standard provided by law, it does not count towards a violation of the Speedy Trial Act.

---

[6] Defendant does not explicitly cite the statutory limitation, but he does note that Magistrate Judge Foster conducted the competency hearing pursuant to 18 U.S.C. § 4241, and it is clear from the context of his argument that he believes the 4-month limitation provided by that statute should serve as a bar to exclusion under the Speedy Trial Act. *See* Def.'s Br. ¶¶ 8–13.

[7] These orders were entered on September 19, 2012, November 29, 2012 (with a marginal note relating to Defendant added on December 3), and February 25, 2013.

[8] The five days between September 14 and September 19 had already been excluded under the Court's July 20, 2012 continuance, *see* Docket No. 120, and by Magistrate Judge Foster's May 25 order excluding from the Act all time required to evaluate defendant before his reappearance in court for a competency disposition, *see* Docket No. 112.

### 4. The 20 days from 7/19/2013 to 8/9/2013

Defendant seeks to charge to the government the 20 days that he claims elapsed between the completion of the Butner Center's report on Defendant's treatment and the report's transmission to the Court. This period was expressly excluded from consideration under the Act by the Court's continuance order of April 16, 2013, which re-set the trial date from June 17 to October 7 on the basis of Defendant's continued incompetency. *See* Docket No. 174 (citing 18 U.S.C. § 3161(h)(4)). Defendant offers no statutory basis for contravening the Court's express finding, and indeed his argument appears to be based solely on the perceived fairness of charging such a period of delay to the government. *See* Def.'s Br. ¶ 26 (claiming that "the report was not appropriately or timely transmitted to the court"). Such an argument, however, fails in the face of the clear text of the Act, which mandates automatic exclusion during a defendant's periods of incompetency. *See O'Connor*, 656 F.3d at 642.

### C. Total Time Chargeable to the Government

Of the 280 days that Defendant seeks to charge to the government for purposes of the Speedy Trial Act, we have thus found that only 22 days count towards the 70-day limit: the time between Defendant's initial appearance and the filing of the first motion to continue. Both the government and defense counsel agree that Defendant is presently incompetent to stand trial and that he has been so since he filed the present motion to dismiss on November 14, 2013. The Court's most recent continuance, which reassigned the case for trial starting on January 13, 2014, expressly excluded all delay resulting until that date from consideration under the Act on the basis of Defendant's continuing incompetency. If and when Defendant regains competency—and in the absence of other grounds for exclusion--the Speedy Trial clock will resume its progress.

Until then, the government remains in compliance with the Act, and we must deny Defendant's motion to dismiss as to this statutory claim.

## II.     The Sixth Amendment

### A. Standard of Review

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. While the Supreme Court has declined to crystallize this amorphous constitutional language into a *per se* rule, it has developed a four-part test to guide lower courts' resolution of speedy trial claims under the Sixth Amendment. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). In *Doggett v. United States,* 505 U.S. 647 (1992)**,** the Court explained the purpose and structure of the governing standard as follows:

> On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an "accused" for any reason at all. Our cases, however, have qualified the literal sweep of the provision by specifically recognizing the relevance of four separate enquiries: [1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result.

505 U.S. at 651 (citing *Barker,* 407 U.S. at 530). Of these four factors, the first—the length of delay—functions as a threshold inquiry. *See Barker,* 407 U.S. at 530 (describing length of delay as a "triggering mechanism"); *United States v. Loera,* 565 F.3d 406, 412 (7th Cir. 2009) ("the first factor is . . . a threshold requirement"). If the time elapsed between indictment and trial is so long as to be "presumptively prejudicial," then—and only then—will a court proceed to weigh the remaining criteria. *See, e.g., United States ex rel. Mitchell v. Fairman,* 750 F.2d 806, 808 (7th Cir. 1984) ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.") (quoting *Barker,* 407 U.S. at 530).

The "presumption" of unreasonableness created by an excessively lengthy delay, however, is no presumption in the formal sense; it does not relieve a defendant of his burden of establishing a Sixth Amendment violation based on a weighing of the four *Barker* factors as a whole. *See Danks v. Davis,* 355 F.3d 1005, 1008–1009 (7th Cir. 2004). If a court determines that the government has violated a defendant's constitutional speedy trial rights, dismissal of the charges is the only appropriate remedy. *Strunk v. United States,* 412 U.S. 434, 439–440 (1973). Such a remedy, especially where it could result in a guilty defendant escaping sanction, is often an "unsatisfactorily severe" one. *See Barker,* 407 U.S. at 522. Courts must therefore exercise caution, weighing the acute restraint demanded by the bluntness of the dismissal remedy against the sensitivity warranted by the fundamental place the speedy trial guarantee holds within the scheme of defendants' rights enshrined in the Constitution. *Id.* at 533.[9]

## B. Application to Defendant

In *United States v. Gearhart,* 576 F.3d 459 (7th Cir. 2009), the Seventh Circuit noted that "the constitutional right to a speedy trial is both narrower and broader than the corresponding statutory right" under the Speedy Trial Act. 576 F.3d at 462. It is broader in the sense that it sweeps in *all* time between the commencement of the case and the eventual trial, without the numerous enumerated exclusions provided by the statute. *Id.* (citing *United States v. Dessesaure,* 556 F.3d 83, 86 (1st Cir. 2009)). It is narrower, however, in that—unlike the Speedy Trial Act— it cannot be triggered by a mere technical violation. The Sixth Amendment is implicated only by

---

[9] In his brief, Defendant refers to federal courts' authority under Federal Rules of Criminal Procedure 48(b)(3) to dismiss an indictment if "unnecessary delay occurs in . . . bringing a defendant to trial." Def.'s Br. ¶ 36 (citing Fed. R. Crim. Pro. 48(b)(3)). However, he situates the rest of his argument (apart from his Speedy Trial Act claim) as a constitutional claim under the Sixth Amendment. *See* Def.'s Br. ¶¶ 37–38. Although we possess discretion, in "extreme" circumstances, under Rule 48 to dismiss an indictment even in the absence of a statutory or constitutional violation, *see United States v. Carlone,* 666 F.2d 1112, 1116 (7th Cir. 1981), Defendant has presented us no arguments that such a situation exists, arguing rather on the basis of the four-part *Barker* test. Without having been presented any reasons for doing so, and in the absence of egregious facts compelling such an extraordinary action, we decline to dismiss the charges against Defendant as an exercise of our inherent discretion under the federal rules.

grave transgressions of the defendant's rights—by cases in which the government is substantially responsible for a delay that is not only lengthy, but actually harmful to a defendant. *See O'Connor,* 656 F.3d at 643. That contrast is particularly telling here. While the greater temporal reach of the constitutional inquiry renders Defendant's claim worthy of further inquiry, he fails to clear the Sixth Amendment's correspondingly higher substantive threshold.

### 1. Length of Delay

With respect to the first *Barker* factor, there is no firm point past which a delay in bringing a defendant to trial becomes excessive. Rather, the answer to this threshold question may vary with the severity or complexity of the underlying crime: "For example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *United States v. Koller,* 956 F.2d 1408, 1413 (7th Cir. 1992). The Seventh Circuit has, however, indicated a rough benchmark: "delay approaching one year is presumptively prejudicial." *See Loera,* 565 F.3d at 412; *United States v. White,* 443 F.3d 582, 589 (7th Cir. 2006). Here, more than 23 months have elapsed since the government indicted Defendant in January 2012. Without question, enough time has passed to require further scrutiny of the circumstances causing the delay. Accordingly, we now proceed to review the additional three context factors set forth in the *Barker* balancing test.

### 2. Cause of the Delay

The next inquiry is whether the government or Defendant himself bears the greater responsibility for the delays in his trial. Although neither party here is blameless, it seems clear to us that Defendant was the predominant cause of the postponements.

As the government pointed out in its response to this motion, we have thus far granted eight continuances—eight sought by Defendant or one of his co-defendants, and none sought by

the government. *See* Gov't.'s Resp. 6, 8.[10] The first request, made by co-Defendant Thomas Owings and concurred in by Defendant, cited the defendants' need for additional time to prepare for trial and negotiate possible plea agreements. *See* Case No. 1:12-cr-00003-SEB-TAB-2, Docket No. 85. On February 24, 2012, defense counsel moved for a psychiatric exam, asserting that "[r]ecent interviews with Defendant Patterson ha[ve] caused counsel to have concerns regarding Defendant's ability to understand the nature and consequences of the proceedings and assist his counsel in presenting a defense." Docket No. 88. Since that time, a series of proceedings regarding Defendant's competency have rendered trial impossible: from February to early May 2012, the court awaited Dr. Callaway's initial psychiatric examination report; after the parties jointly moved for further evaluation, Defendant was remanded to federal custody in Illinois from May to September 2012; after Magistrate Judge Foster held a competency hearing on September 14, 2012, Defendant was remanded to federal custody again for treatment as the Court awaited a report on whether his competency could be restored. *See supra,* at 2–5. Most recently—based on the recommendations provided by the Butner Medical Center—the Court has ordered involuntary medication to restore competency. *Id.* at 5. Trial remains impossible, however, while that order is stayed pending appeal.

As a general matter, a defendant bears the responsibility for his delayed trial where the postponements were prompted by his own requests for continuances. *See United States v. Saenz,* 623 F.3d 461, 464–465 (7th Cir. 2010). And although it would be callous to pronounce an incompetent defendant "at fault" for his temporary or permanent mental incapacity to stand trial, case law establishes that, for constitutional purposes, periods of delay caused by a defendant's incompetency—or related evaluation or treatment procedures—are attributable to the defendant rather than the government. *See Danks,* 355 F.3d at 1009 (citing *United States v. Abou-Kassem,*

[10] The continuance orders are found at Docket Nos. 87, 96, 100, 120, 129, 155, 169, 174, & 181.

78 F.3d 161, 167 (5th Cir. 1996)); *see also United States v. Vasquez,* 918 F.2d 329, 338 (2d Cir. 1990).

While not disputing that Defendant was incompetent or denying that the procedures ordered by the Court were proper, defense counsel counters that the government caused inordinate delay in carrying out the various stages of Defendant's evaluation and treatment. He complains of two incidents in particular. He points to the 88 days consumed by Defendant's competency evaluation in Illinois from May to September 2012, contending that this period exceeds the limitations on such commitments imposed by 18 U.S.C. § 4247(b). Def.'s Br. ¶¶ 5–6. He also argues the government was dilatory in transporting Defendant to the Butner Center after the Magistrate Judge's treatment order in October 2012, and that the Butner staff did not complete their reports with diligence once he was there. *Id.* at ¶¶ 24–26.

The impact of Defendant's criticisms of the government is tempered here by two considerations. First, some of the delay in producing the Butner Center's recommendations may have been the result of Defendant's own intransigent behavior. The Butner report indicates that he refused to take any medications that might assist in restoring his competency, and he steadfastly resisted to cooperate with any psychological testing. *See* Docket No. 183, at 5–6; *cf. United States v. Zabawa,* 719 F.3d 555, 563 (6th Cir. 2013) (declining to place responsibility for delay on government where a large portion of it was caused by defendant's "disruptive" behavior).  Second, even where the government appears to have negligently caused unnecessary delays—most notably in transporting Defendant to Butner—there is no evidence of bad faith. While negligence or carelessness "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution," it is unlike governmental bad faith in that it does not virtually compel the conclusion that a constitutional violation has

occurred. *See Doggett,* 505 U.S. at 656–657 (citing *Barker,* 407 U.S. at 531). Under similar circumstances, the Second Circuit in *United States v. Vasquez,* 918 F.2d 329 (2d Cir. 1990), determined that the government's failure promptly to carry out a competency evaluation of the defendant at the Butner facility should be ascribed to "institutional dysfunction rather than deliberate wrongdoing," and the court therefore reasoned that the delays need not be weighed decisively against the government for purposes of *Barker* balancing. 918 F.2d at 338. We conclude similarly. The record here shows that it would be unreasonable to tag the government with responsibility for the many continuances requested by Defendant—mostly necessitated by his undisputed incapacity to stand trial.

### 3. Defendant's Assertion of his Right and Prejudice from the Delay

Neither of the final two factors in the *Barker* balancing test tilts heavily in favor of Defendant. Defense counsel argues that he promptly raised Defendant's speedy trial right when he filed his January 18, 2013 "request for hearing," bringing to the Court's attention federal officials' failure to timely transfer Defendant to the Butner facility. Def.'s Br. ¶ 38. Even if we assume that this hearing request, which never mentioned the terms "speedy trial" or "Sixth Amendment," constituted a demand for the vindication of his Sixth Amendment rights, it carries little weight in this context. As the Seventh Circuit has noted, the third *Barker* factor "does not contribute much to the balance of equities"; a defendant's diligence or negligence in raising the speedy trial issue has more salience on a post-conviction appeal, where a reviewing court may be persuaded by his or her attempts to bring the matter to the district court's attention in a timely manner, as the alleged violations occurred. *See United States v. Ellis,* 622 F.3d 784, 791 (7th Cir. 2010).

The final question we must consider is the extent to which Defendant has been prejudiced by the delay in his trial. As the *Doggett* Court observed, "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett,* 505 U.S. at 653 (citations omitted). Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Because it is difficult to present positive proof that delay has dimmed witness memories and decreased the availability of exculpatory evidence—and such difficulty is compounded the longer the postponements stretch—the Court recognizes a rule-of-thumb presumption that "excessive delay . . . compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655 (citing *Barker,* 407 U.S. at 532).

Defendant is therefore entitled to the baseline presumption that a delay of nearly two years has harmed his ability to marshal convincing evidence in his defense at trial. While this presumption is "part of the mix of relevant facts," however, it is not sufficient by itself to carry a Sixth Amendment claim. *See Doggett,* 505 U.S. at 655; *United States v. Loud Hawk,* 474 U.S. 302, 315 (1986). Here, Defendant has presented no evidence of any further, specific prejudice. He asserts that he has been "unable to ascertain if witnesses exist that would be helpful to the defense and due to the passage of time it is unlikely that any meaningful investigation of the government's case can now be conducted." Def.'s Br. ¶ 33(c). But this merely restates the presumption already operating in his favor. An inability to point to more concrete indicia of prejudice diminishes the weight of this factor in the *Barker* balance. *See Saenz,* 623 F.3d at 465 (according diminished significance to claim of prejudice without any evidence that claimant's

"defense was otherwise tangibly impaired"); *Ellis,* 622 F.3d at 791 (discussing the reduced persuasiveness of defendant's failure to show "more concrete form of prejudice attributable to the gap in time between indictment and trial")**.**

## C. Conclusion as to the Sixth Amendment

In grappling with the unique challenges inherent in articulating the constitutional guarantee of a speedy trial into a workable judicial standard, the Supreme Court in *Barker v. Wingo* noted that the interest protected by the Sixth Amendment was something of an anomaly among the Bill of Rights. In addition to the line-drawing problem presented by the vagueness of the charter's language, the speedy trial right is problematically ambiguous in its beneficiaries. As the Court observed:

> [D]eprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-in-crimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.

*Barker,* 407 U.S. at 521. The double-edged nature of delays in trial must give courts pause, and it often counsels against finding a deprivation unless the defendant can show that the delay was both unreasonably lengthy, and either attributable to government misconduct or demonstrably harmful to his prospects of defending himself. Here, Defendant's incompetency was the cause necessitating the great bulk of the trial postponements, and he has presented no tangible evidence that this unfortunate but unavoidable handicap has damaged his defense any more than is to be expected from the bare fact of the passage of time. In sum, he has failed to demonstrate that the factors set forth to guide our reasoning by the Supreme Court in *Barker* weigh to his advantage,

and we therefore conclude that he has not suffered a violation of his Sixth Amendment right to a speedy trial.

## Conclusion

Defendant has not established his entitlement to relief under either the Speedy Trial Act or the Sixth Amendment. His motion to dismiss on grounds that he has been denied his right to a speedy trial is accordingly DENIED.

IT IS SO ORDERED.

Date: _12/23/2013_

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Electronically registered counsel of record via ECF